**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**RANDOLPH M. JONES,**

                                        **Plaintiff,**

            **v.**                                                      **5:08-CV-1045**
                                                                          **(FJS/GHL)**

**ONONDAGA COUNTY RESOURCE RECOVERY**
**AGENCY, A. THOMPSON RHOADS, JOSEPH**
**FONTANELLA, and MAUREEN NOSICK,**
**individually and in their official capacities,**

                                        **Defendants.**
_____

**APPEARANCES**                                    **OF COUNSEL**

**O'HARA, O'CONNELL &**                          **STEPHEN CIOTOLI, ESQ.**
**CIOTOLI**                                        **TIMOTHY A. COLLINS, ESQ.**
7207 East Genesee Street
Fayetteville, New York 13066
Attorneys for Plaintiff

**HARRIS BEACH, PLLC**                            **TED H. WILLIAMS, ESQ.**
One Park Place, 4th Floor
300 South State Street
Syracuse, New York 13202
Attorneys for Defendants

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

        On October 1, 2008, Plaintiff filed his complaint, in which he asserted six causes of

action.[1]  In his first and second causes of action, Plaintiff claimed that Defendants subjected him

_____

        [1] Plaintiff's complaint contains two "fifth" causes of action.  The Court will refer to the
first of these as the fifth cause of action and to the second one as the sixth cause of action.

to discrimination, disparate treatment and a hostile work environment in violation of Title VII. In his third cause of action, Plaintiff asserted that Defendants retaliated against him in violation of Title VII.  In his fourth cause of action, pursuant to 42 U.S.C. § 1983, Plaintiff contended that Defendants violated his rights under the Equal Protection Clause.  In his fifth cause of action, Plaintiff alleged, pursuant to 42 U.S.C. § 1981a, that Defendants violated his rights under the Equal Protection Clause.  Finally, in his sixth cause of action, Plaintiff claimed that Defendants subjected him to discrimination, disparate treatment, and a hostile work environment in violation of New York's Human Rights Law.

On May 6, 2010, Defendants filed a motion for summary judgment.  *See* Dkt. No. 35. Plaintiff opposed that motion.  *See* Dkt. No. 37.  Defendants filed an affidavit in further support of their motion on June 30, 2010.  *See* Dkt. No. 38.  On July 29, 2010, the Court heard oral argument in support of, and in opposition to, that motion.  *See* Minute Entry dated July 29, 2010. At oral argument, Plaintiff agreed to dismiss all claims against Defendant Nosik, to dismiss all 42 U.S.C. § 1981a claims against all Defendants, and to dismiss his Title VII claims against the individual Defendants.  At the close of oral argument, the Court dismissed Plaintiff's claims under 42 U.S.C. § 1983 against all Defendants and reserved decision with regard to Plaintiff's claims against the individual Defendants under New York's Human Rights Law and his Title VII claim against Defendant Onondaga County Resource and Recovery Agency ("OCRRA").  The following is the Court's written disposition of Plaintiff's remaining claims.

## II. BACKGROUND

Plaintiff, an African American, began his employment with Defendant OCRRA on April

13, 1987, as a tractor trailer driver and has been so employed for more than twenty-one years. *See* Defendants' Statement of Material Facts at ¶¶ 1-3 (citing Complaint ¶ 16). Defendant Rhoads is the Executive Director of Defendant OCRRA and reports to its fifteen-member Board of Directors. *See id.* at ¶ 8 (citing Complaint ¶ 12). Defendant Fontanella is Defendant OCRRA's Transfer Director with responsibility for overall management of operations at two sites, Ley Creek Transfer Station and Rock Cut Road Transfer Station. *See id.* at ¶ 9 (citing Complaint ¶ 3).

At Defendant OCRRA's Ley Creek Transfer Station, Leroy Sabin, a union member, was the permanent Plant Operator and, as such, was a working team leader with supervisory responsibility over the employees at the station, including Plaintiff. *See id.* at ¶ 13 (citing Fontanella Affidavit ¶ 4). Joseph Broome, an African American, was the Plant Supervisor at the Rock Cut Road Transfer Station; unlike Mr. Sabin, Mr. Broome was a member of Defendant OCRRA management and not a union member. *See id.* at ¶ 14 (citing Fontanella Affidavit ¶ 5).

The Plant Operator is responsible for supervising the daily operations of the transfer station, including customer service issues, maintenance of equipment, dispatch of drivers, delegation of duties to laborers, maintenance of the physical plant, and the safety and security of workers and customers. *See id.* at ¶ 15 (citing Fontanella Affidavit ¶ 7). On or about March 28, 2007, Plaintiff met with Defendant Fontanella and expressed his intention and desire to obtain a promotion to "Plant Operator" either on a permanent or temporary basis and to receive the necessary training to qualify for such position, the bulk of which is on-the-job training. *See* Complaint at ¶ 20. When he expressed this interest to Defendant Fontanella, Plaintiff did not complain about or mention discrimination. *See* Defendants' Statement of Material Facts at ¶ 18

(citing Jones Transcript dated November 19, 2009, p. 19; Fontanella Affidavit ¶¶ 15-22).  At that time, Plaintiff did not want the permanent Plant Operator position, had not bid on that position, and had not taken the Civil Service Exam necessary for obtaining the permanent position.  *See id.* at ¶ 19 (citing Jones Transcript dated November 19, 2009, pp. 9-30; Jones Transcript dated November 16, 2009, pp. 106-108).

When the incumbent Plant Operator took a day off, or for periods of less than two weeks, it was Defendant OCRRA's practice, consistent with its interpretation of Section 17.1 of the Collective Bargaining Agreement, to assign an employee familiar with the daily operations of the plant to perform the tasks of the Plant Operator necessary to keep the facility running in a safe and efficient manner.  *See id.* at ¶ 20 (citing Fontanella Affidavit ¶ 14).  On or about April 5, 2007, Plaintiff learned that Mr. Sabin had assigned Angel Luis Maldonado (a Latino) to fill a temporary job opening of less than two weeks as the Plant Operator at the Ley Creek Transfer Station.  *See id.* at ¶ 21 (citing Jones Transcript dated November 16, 2009, pp. 37-38; Fontanella Affidavit ¶ 10).

Mr. Maldonado was hired on July 28, 1987, worked as a truck driver for approximately nine years, and then bid into a position operating equipment at the Ley Creek Transfer Station. *See id.* at ¶ 22.  Unlike Plaintiff, as of April 2007, Mr. Maldonado had approximately eight years of experience working at the Ley Creek Transfer Station.  *See id.* (citing Nosik Affidavit ¶ 4; Nosik Exhibit "A").  As of 2007, Plaintiff had always worked as a tractor trailer driver and had no experience working at the transfer station.  *See id.* at ¶ 23 (citing Nosik Affidavit ¶ 5; Fontanella Affidavit ¶ 10).

When Plaintiff learned that Mr. Maldonado had been assigned to fill the temporary

vacancy, Plaintiff approached Defendant Fontanella, with union representative Darryl Merriman, and complained that he should have been assigned to that position because he was senior to Mr. Maldonado. *See id.* at ¶ 24 (Fontanella Affidavit ¶ 15; Jones Transcript dated November 16, 2009, p. 125). Defendant Fontanella told Plaintiff that it was Defendant OCRRA's position that, pursuant to Section 17.1 of the CBA, management had the right to assign people to positions of less than two weeks without regard to the seniority list. *See id.* at ¶ 25 (citing Fontanella Affidavit ¶ 16).

Defendant Fontanella also told Plaintiff that it was Leroy Sabin's choice to pick who he thought would be best qualified to fill in for him on a temporary basis of less than two weeks. *See id.* at ¶ 26 (citing Fontanella Affidavit at ¶ 17). In response to Plaintiff's request for training to qualify for the Ley Creek position, Defendant Fontanella told him that he would ask Ms. Nosik, OCRRA's Personnel Analyst, to set up training classes for anyone who was interested but that it would take some time. *See id.* at ¶ 27 (citing Jones Transcript dated November 16, 2009, p. 128; Fontanella Affidavit ¶ 19).

Plaintiff described his March 28, 2007 discussion with Defendant Fontanella as "calm" and "cordial." *See id.* at ¶ 28 (citing Jones Transcript dated November 16, 2009, pp. 121, 124). Plaintiff did not claim at that time that he believed the appointment of Mr. Maldonado was discriminatory; rather, he claimed that it was a breach of the CBA. *See id.* at ¶ 32 (Fontanella Affidavit ¶ 22; Jones Transcript dated November 16, 2009, p. 38). When he was asked at his deposition whether he was seeking corrective action for discrimination, Plaintiff responded, "I would say a correctiv3 action according to our CBA with [Defendant] OCRRA." *See id.* at ¶ 33 (citing Jones Transcript dated November 19, 2009, pp. 74-75).

On May 3, 2007, two Caucasian employees, Doug Trudeau and Darren Brandt, filed grievances which Plaintiff, as union steward, processed, challenging OCRRA's interpretation of Section 17.1 of the CBA. *See id.* at ¶ 34. Both of these employees were tractor trailer drivers, like Plaintiff, and believed that, due to their seniority, they should have been asked to fill higher paid temporary vacancies at the Ley Creek Transfer Station. *See id.* at ¶ 34 (citing Fontanella Affidavit ¶ 23; Fontanella Exhibit "B").

On Friday, April 27, 2007, someone complained to Plaintiff's supervisor, Leroy Sabin, that Plaintiff was holding them up and not pulling his weight. *See id.* at ¶ 38 (citing Fontanella Affidavit ¶ 29; Jones Transcript dated November 16, 2009, p. 184). On the following Monday, Mr. Sabin investigated the complaint by looking at data showing Plaintiff's hours per trip between April 23 and April 27, 2007.

Plaintiff learned that Mr. Sabin had been asking questions about his whereabouts. On May 3, 2007, before Mr. Sabin raised any issues, Plaintiff approached him and told him, in words and substance, that, if he wanted to know where he was, he should contact him directly and not ask other employees. Plaintiff also told Mr. Sabin that he had been to the bank and Wendy's for lunch in his truck and that he would continue to do things the way he had always done them. *See id.* at ¶ 42 (citing Fontanella Affidavit ¶ 28; Jones Transcript pp. 136-142). Plaintiff initiated this confrontation with Mr. Sabin. *See id.* at ¶ 43 (Jones Transcript dated November 16, 2009, pp. 136-137).

On May 11, 2007, Defendant Fontanella issued a disciplinary report, citing Plaintiff with violating the following work rules: (1) Work Rule #12 - insubordination (2 day suspension); (2) Work Rule #14 - interfering with his supervisor; Work Rule #2 - exceeding break period –

wasting time (one day suspension); Work Rule #14 - coercing or intimidating supervisor on

Agency property; Work Rule #29 - conducting personal business during work hours (one day

suspension); and Work Rule #30 - using Agency vehicle for personal use. *See id.* at ¶ 47 (citing

Fontanella Affidavit ¶ 35; Exhibit "D").

 Plaintiff filed a union grievance the same day that Defendant Fontanella issued the

disciplinary report, claiming "overly harsh discipline." *See id.* at ¶ 48 (citing Fontanella Affidavit

¶ 37; Exhibit "E").  Pursuant to the CBA, the grievance proceeded through Steps Two and Three,

which Defendant OCRRA conducted. *See id.* at ¶ 49 (citing Fontanella Exhibits "E," "F," "G,"

and "H").  On June 22, 2007, during the Step Three grievance meeting that Defendant Rhoads

conducted, Plaintiff told Defendant Rhoads that he was trying to "whip [Plaintiff]" with a pen.

Plaintiff contends that this was his first complaint of discrimination to Defendant OCRRA. *See*

*id.* at ¶ 50 (citing Jones Transcript dated November 19, 2009, p. 26).  On July 25, 2007, during

Step Three of the disciplinary grievance process, union counsel mentioned "discrimination" to

Defendant Rhoads; Plaintiff was not present and did not make the claim himself. *See id.* at ¶ 51

(citing Jones Transcript dated November 19, 2009, pp. 20 and 22).  In response to union

counsel's statement, Defendant Rhoads suggested that, if Plaintiff believed there was

discrimination, he should file a complaint with Defendant Nosik pursuant to Defendant

OCRRA's anti-harassment/discrimination policy. *See id.* at ¶ 52 (citing Jones Transcript dated

November 19, 2009, p. 20).  Plaintiff never filed a complaint of harassment/discrimination with

Defendant OCRRA. *See id.* at ¶ 53 (citing Jones Transcript dated November 19, 2009, p. 21;

Nosik Affidavit ¶ 9).

 Defendant Rhodes heard the grievance at Step Three and reduced the discipline pursuant

to a written decision dated July 25, 2007, as follows: Work Rule #12 - dismissed; Work Rule #14 - dismissed; Work Rule #30 - written warning; Work Rule #29 - written warning; Work Rule #4 - one day suspension without pay; Work Rule #2 - one day suspension without pay. *See id.* at ¶ 54 (citing Fontanella Affidavit ¶ 39; Fontanella Exhibit "G").

The Union pursued an appeal of the step three grievance determination through binding arbitration with the Federal Mediation and Conciliation Service, Mona Miller, Arbitrator. *See id.* at ¶ 55 (citing Fontanella Exhibit "H"). The arbitration hearing was held on November 9, 2007, and November 29, 2007. Plaintiff attended and was represented by union counsel and his union representative. *See id.* at ¶ 56 (Fontanella Affidavit ¶ 41; Fontanella Exhibit "H"). Plaintiff was given a full and fair opportunity to introduce evidence and witnesses in support of his grievance and to challenge Defendant OCRRA's evidence and witnesses. *See id.* at ¶ 57 (citing Jones Transcript dated November 16, 2009, p. 177). On February 26, 2008, the arbitrator issued her decision, sustaining in part and denying in part the grievance. *See id.* The arbitrator upheld a one-day suspension without pay. *See id.* at ¶ 59 (citing Fontanella Exhibit "H").

Plaintiff acknowledged that he was disciplined well before he claimed discrimination. *See id.* at ¶ 61 (citing Jones Transcript dated November 19, 2009, p. 26). Defendant OCRRA disciplined and suspended other employees for inappropriate conduct toward their coworkers, including Mr. Maldonado, who was suspended without pay for two weeks in 2000 for an outburst toward his supervisor, Mr. Broome. *See id.* at ¶ 62 (citing Nosik Affidavit ¶ 11; Exhibit "C"). This suspension was reduced to one week without pay after the union grieved the punishment imposed. *See id.* Furthermore, in September 2007, Defendant OCRRA suspended employee Bradley Tenhave (a Caucasian) for two days without pay for using profane language directed to a

coworker and a customer.  *See id.* at ¶ 63 (citing Nosik Affidavit ¶ 12; Exhibit "D").

On October 23, 2007, Plaintiff filed a complaint with the New York State Division of

Human Rights and the Equal Employment Opportunity Commission against Defendant OCRRA,

alleging the following:

> 1. I am and I opposed unlawful discrimination in the respondent's workplace.  Because of this, I have been subject to unlawful discriminatory actions.
>
> 2. I have been employed by respondent for over 21 years.  I am presently employed as a driver out of the respondent's Lay [sic] Creek transfer station.
>
> 3. Beginning in April 2007, I made management, specifically Tome Roase, [sic] executive director and Joe Fontinella [sic], transfer director, of my belief that the respondent was not following contractual obligations.  Three African/Americans possessing more seniority than an employee appointed to work as plant operator during the agsence [sic] of Leroy Sabine [sic], plant operator were bypassed by plant officials.
>
> 4. **In response to my allegation that the respondent was perpetrating racial discrimination against me**, Mr. Fontinella [sic] **retaliated against me** by serving me with a written warning charging me with insubordinate behavior with a punishment of a 4-day suspension despite the lack of any progressive discipline.  I am aware of comparably situated white employee, Tom Allen, who received a similar written warning but was not suspended as his write-up was also not based on any progressive discipline.
>
> 5. On October 5, 2007, the respondent most recently bypassed me as plant operator in relief of Mr. Sabine [sic] and therefore, I believe that the respondent is **continuing to perpetrate racial discrimination** in its workplace.
>
> 6. The respondent's actions are causing me to suffer mental anguish and financial loss.
>
> Based on the foregoing, I charge respondent with an unlawful discriminatory practice relating to employment because of opposed

discrimination/retaliation, race/color, in violation of the New
York State Human Rights Law (Executive Law, Article 15),
Section 296.

*See* Nosik Affidavit at Exhibit "E" (emphasis added).

The only respondent that Plaintiff named in his administrative complaint was Defendant

OCRRA.  *See id.*

Plaintiff testified that, prior to 2007, he had been "harassed" on the job due to his strong

personality, but not based on his race.  *See* Defendants' Statement of Material Facts at ¶ 68 (citing

Jones Transcript dated November 16, 2009, p. 93).

On April 1, 2008, the New York State Division of Human Rights issued its

Determination and Order after Investigation, finding no probable cause.  *See id.* at ¶ 71 (citing

Nosik Aff. ¶ 15; Exhibit "F").  On July 3, 2008, the EEOC adopted the findings of the New York

State Division of Human Rights and issued its right-to-sue letter.  *See id.* at ¶ 72 (citing Nosik

Exhibit "G").

### III. DISCUSSION

**A.   Plaintiff's claims under New York's Human Rights Law against Defendants Rhoads
       and Fontanella**[2]

In the verified complaint that Plaintiff filed with the New York State Division of Human

---

[2] Plaintiff appears to recognize that he cannot maintain his state-law discrimination
claims against Defendant OCRRA because he chose to file those claims with the New York State
Division of Human Rights, which issued a decision on the merits of those claims.  *See Altieri v.
Albany Pub. Library*, 1:05CV126, 2005 WL 1388905, *2 (June 8, 2005) (holding that "'[f]ederal
courts . . . may not adjudicate a claim of unlawful discriminatory practice under section 296
which has already been filed with the state DHR unless the DHR dismissed the claim for
administrative convenience'" (quotation omitted)).

Rights, the only respondent he named was OCRRA.  *See* Affidavit of Maureen Nosik sworn to

May 6, 2010 ("Nosik Aff."), at ¶ 14 & Exhibit "E" attached thereto.  Nonetheless, Plaintiff

contends that he can pursue his state-law claims against Defendants Rhoads and Fontanella

because his claims against them are a natural outgrowth of his state-law claims against Defendant

OCRRA.

      Plaintiff's state-law claims against Defendants Rhoads and Fontanella fail because the

Court does not have subject matter jurisdiction over those claims pursuant to the election of

remedies doctrine.[3]  New York's Human Rights Law provides, in pertinent part, that

"[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause

of action in any court of appropriate jurisdiction for damages, . . . and such other remedies as

may be appropriate, . . . **unless** such person had filed a complaint hereunder with any local

commission on human rights . . . ."  N.Y. Exec. Law § 297(9) (emphasis added).  In other words,

"'under the so-called election of remedies doctrine, "an aggrieved individual has the choice of

instituting either judicial or administrative proceedings.  [He] may not, however, resort to both

forums; having invoked one procedure, [he] has elected [his] remedies."'"  *Lyman v. City of N.Y.*,

No. 96 Civ. 2382, 1997 WL 473976, *4 (S.D.N.Y. Aug. 20, 1997) (quotation omitted).

      As noted, Plaintiff filed a complaint with the New York State Division of Human Rights

and E.E.O.C. on October 23, 2007, against Defendant OCRRA; and, on April 1, 2008, the New

York State Division of Human Rights issued its Determination and Order after Investigation

---

      [3] Although the parties did not raise the issue of subject matter jurisdiction, "the court has
the duty to dismiss the action *sua sponte*" if it finds that subject matter jurisdiction is lacking.
*Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir.
2009) (citation omitted).

finding no probable cause.  Thus, the election of remedies doctrine bars Plaintiff from asserting

his claims under New York's Human Rights Law in this Court.  The facts that Plaintiff did not

name Defendants Rhoads and Fontanella as respondents in his administrative complaint and that

the complaint before this Court may include some factual allegations that Plaintiff did not

include in his administrative complaint do not change this result because the claims in the present

action are based on the same facts as the claims that Plaintiff raised in his administrative

complaint.  *See Lyman*, 1997 WL 473976, at *4 (citing *Brown*, 226 A.D.2d at 571, 641 N.Y.S.2d

at 126 ("[S]ince the Supreme Court was deprived of its subject matter jurisdiction to consider the

plaintiff's cause of action when the plaintiff commenced the administrative action against the

corporate defendant, the plaintiff could not commence an action in the court, arising out of the

same facts, against an additional defendant who was not named in the administrative

complaint.")) (other citations omitted).  Accordingly, the Court grants Defendants' motion for

summary judgment with respect to Plaintiff's state-law claims against Defendants Rhoads and

Fontanella for lack of subject matter jurisdiction.


**B.      Plaintiff's Title VII claims against Defendant OCRRA**

> *1. Plaintiff's hostile work environment claim*

Generally, before a plaintiff can bring a Title VII discrimination claim in federal court, he

must first exhaust his administrative remedies by "'filing a timely charge with the EEOC or with

"a State or local agency with authority to grant or seek relief from such practice."'"  *Morris v.

David Lerner Assocs.*, 680 F. Supp. 2d 430, 436 (E.D.N.Y. 2010) (quoting *Holtz v. Rockefeller &

Co., Inc.*, 258 F.3d 62, 82-83 (2d Cir. 2001) (quoting 42 U.S.C. § 2000e-5(e))).  However, a

plaintiff may pursue claims that he did not assert before the state agency in federal court if those claims are reasonably related to the claims that he did file with the state agency. *See id.* (quotation omitted). In this context, "reasonably related" conduct is conduct that "'"would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made."'" *Id.* (quotation and other citation and footnote omitted).

To determine whether a claim is reasonably related to the claim asserted in the administrative charge, the court must focus "'"on the factual allegations made in the [EEOC] charge itself . . .'" and on whether those allegations 'gave the [EEOC] "adequate notice to investigate"' the claims asserted in court." *Id.* (quotation omitted).

Defendant OCRRA argues that the Court should dismiss Plaintiff's hostile work environment claim because Plaintiff did not allege such a claim in his administrative complaint and such a claim is not reasonably related to the conduct about which he complained in his administrative complaint. *See* Defendant's Memorandum of Law at 22. To the contrary, Plaintiff asserts that he was not required to refer to hostile work environment in his administrative complaint as long as the factual allegations in that complaint support a claim for hostile work environment. *See* Plaintiff's Memorandum of Law at 24.

A review of Plaintiff's administrative complaint demonstrates that there is no mention of a hostile work environment nor, contrary to Plaintiff's assertion, does his administrative complaint allege any facts that would even suggest that Plaintiff was claiming that he was subjected to a hostile work environment. Construing the allegations in his administrative complaint liberally, Plaintiff alleges that Defendant OCRRA selected Caucasian employees with less seniority than three African American employees for the temporary plant operator position

and that, on October 7, 2007, Plaintiff was bypassed for that same position.  In addition, Plaintiff alleges that Defendant Fontanella retaliated against him by serving him with a written warning, charging him with insubordination.  Based on these factual allegations, the Court concludes that the New York State Division of Human Rights would not have had any notice that Plaintiff was complaining about a hostile work environment and that such a claim would not have fallen within the scope of the administrative investigation.  Therefore, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's hostile work environment claim on the ground that Plaintiff failed to exhaust his administrative remedies with regard to such a claim.

### 2. Disparate treatment claim

Courts analyze Title VII claims of race discrimination under the burden shifting analysis that the Supreme Court set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010) (citations omitted).  At the first stage of this analysis, the plaintiff must establish a *prima facie* case.  To do so, the plaintiff must demonstrate that "(1) he is a member of a protected class; (2) he was qualified for the position [he sought]; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." *Id.* at 492 (citation omitted). If the plaintiff meets this burden, "the burden then shifts to the defendant to offer a legitimate nondiscriminatory reason for [its actions]." *Id.* (citation omitted).  If the defendant meets its burden, "the burden returns to the plaintiff to show that the real reason for plaintiff's [not being selected to fill the temporary position] was his race . . . ." *Id.* (citation omitted).

There is no dispute that Plaintiff is a member of a protected class – he is African

-14-

American.  Nor is there any dispute that he suffered an adverse employment action – he was not selected to fill the temporary vacancy in the Plant Operator's position when Mr. Sabin was absent for less than two weeks.  The parties do dispute, however, whether Plaintiff was qualified for that position and whether Defendant OCRRA's decision not to select him gives rise to an inference of discrimination.

Plaintiff does not contend that he was more qualified for the position of Temporary Plant Operator than Mr. Maldonado; and, clearly, given the record, it would be futile for him to do so. Plaintiff's primary complaint appears to be that Defendant OCRRA should have selected him for the position because he had more seniority than Mr. Maldonado.  However, even if, as Plaintiff alleges, Defendant OCRRA had an obligation under the Collective Bargaining Agreement to select employees for positions based on seniority, its failure to do so would not implicate Title VII.

Moreover, even if the Court were to find that issues of fact existed with respect to the qualification prong of the *prima facie* case, Plaintiff has not demonstrated that Defendant OCRRA's decision not to select him for the temporary position gives rise to an inference of discrimination.  If Plaintiff is trying to argue that "seniority" is somehow a pretext for discrimination, this argument fails because, not only did Defendant OCRRA not select Plaintiff for this position, it also did not select two of Plaintiff's Caucasian co-workers who had more seniority than both Plaintiff and the person whom Defendant OCRRA did select.

Alternatively, Plaintiff appears to argue that an inference of discrimination arises because, once he became qualified for the temporary position so that Defendant OCRRA could no longer argue that the reason it did not select him was because he was not qualified, Defendant OCRRA

-15-

changed the criteria for selection to seniority and then forcibly transferred Caucasian employees

with more seniority than Plaintiff to Ley Creek Transfer Station and forced them to accept

selection to the temporary position.  To support this argument, Plaintiff submitted two unsworn

statements.  In one of these statements, Mitchell Stewart asserts that, on January 9, 2008, he and

Doug Trudeau were called into Leroy [Sabin]'s office, where Leroy gave them back the keys to

the plant and told them that Tom Rhoads had told him to tell them that they were getting back the

keys based on seniority and qualification and that, if they refused to accept the keys, they would

be written up for insubordination.  *See* Dkt. No. 37-26.  In the other statement, Doug Trudeau

asserts that, at that same meeting, Leroy told him that Tom Rhoads had stated that, when Leroy

was not there, he would be the plant operator and that, if both Leroy and he were not there, Mitch

would be the plant operator.  He also stated that Leroy told them that, if they did not comply, they

would be reprimanded, charged with insubordination and suspended pending termination.  *See*

Dkt. No. 37-25.

There are several problems with these statements; most significantly, they are unsworn.  It

is well-established that, for a plaintiff to oppose summary judgment properly, he must submit

evidence in admissible form, such as an affidavit.  *See Grant v. Cornell Univ.*, 87 F. Supp. 2d

153, 161 (N.D.N.Y. 2000) (citing *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185

F.3d 61, 65 (2d Cir. 1999) ("a district court should disregard an unsworn letter in ruling on a

summary judgment motion"); *United States v. All Right, Title Interest in Real Property and*

*Appurtenances thereto known as 143-147 East 23rd St.*, 77 F.3d 648, 657-58 (2d Cir. 1996)

(nonmovant's submission of an unsworn letter "was an inappropriate response to the [movant's]

motion for summary judgment, and the factual assertions made in that letter were properly

disregarded by the court")) (other citation omitted).  Moreover, even if the Court were to consider the statements of Mr. Stewart and Mr. Trudeau, there is nothing in those statements that supports Plaintiff's claim that Defendant OCRRA's decision not to select him for the temporary position occurred under circumstances giving rise to an inference of discrimination.  For all these reasons, the Court finds that Plaintiff has failed to meet his burden to establish a *prima facie* case of discrimination.

Even if the Court were to assume that Plaintiff had met his burden to establish a *prima facie* case of discrimination, his claim would still fail because Defendant OCRRA has met its burden to produce evidence that it had a legitimate, non-discriminatory reason for not selecting Plaintiff to fill the temporary position – he was not qualified.  Furthermore, to the extent that Plaintiff now argues that Defendant OCRRA changed course in midstream and began to select employees for this position based on their seniority, Plaintiff has not shown that the employees whom Defendant OCRRA selected instead of him under this new policy had less seniority than he did.

Since Defendant OCRRA has met its burden of production, Plaintiff must meet his ultimate burden to establish that Defendant OCRRA's reason for not selecting him is a mere pretext for discrimination.  In other words, he "'must put forth adequate evidence to support a rational finding that the legitimate non-discriminatory reasons proffered by the employer were false, and that more likely than not the employee's [] race was the real reason for' [not selecting him for the position]."  *Grant*, 87 F. Supp. 2d at 160 (quoting *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 129 (2d Cir. 1996)) (other citation omitted).

At this stage of the analysis, the "'plaintiff may rely on the evidence constituting the prima

facie case, together with supportable inferences to be drawn from the false or erroneous character

of the employer's proffered reason for the adverse action.'" *Id.* (quoting *Fisher*, 114 F.3d at

1333).  However, "[t]he Second Circuit has made clear . . . that if 'plaintiff's evidence was barely

sufficient to make out a prima facie case, it may not be sufficient to establish discrimination after

the defendant has proffered a neutral rationale.'" *Id.* (quoting *Stern v. Trustees of Columbia

Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)) (other citation omitted).

Plaintiff has failed to meet his ultimate burden.  He has offered no evidence that

Defendant OCRRA discriminated against him because of his race.  Although Defendant OCRRA

selected Mr. Maldonado for the temporary position instead of Plaintiff, Plaintiff does not argue

that he was more qualified than Mr. Maldonado.  Moreover, Plaintiff does not assert that

Defendant OCRRA selected anyone for that position who was less qualified than he was.  In fact,

in his administrative complaint, the gravamen of his claim was that Defendant OCRRA selected

employees for the position who had **less seniority** than he did.  Defendant OCRRA does not

dispute this fact; rather it argues that, based on its interpretation of the CBA, it was not bound by

the seniority of the employee when selecting someone for this temporary position.

Furthermore, when Defendant OCRRA allegedly changed its selection process for this

temporary position and began to take seniority into consideration, Plaintiff has not identified

anyone whom Defendant OCRRA selected who had less seniority than he did.  Rather, he states

in conclusory terms and based on two unsworn, and therefore inadmissible, statements that

Defendant OCRRA forced employees with **more** seniority than Plaintiff to accept assignments to

this position or face reprimand and possible termination.

Therefore, after reviewing all of the admissible evidence in the record, the Court

concludes that Plaintiff has failed to meet his ultimate burden to demonstrate that Defendant

OCRRA's reasons for its actions were a pretext for discrimination and grants Defendants' motion

for summary judgment with respect to Plaintiff's Title VII discrimination claim.


### 3. Plaintiff's Title VII retaliation claim

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must demonstrate

that he participated in a protected activity, that the defendant knew about that activity, that the

plaintiff suffered an adverse employment action, and that there was a causal connection between

the protected activity and the adverse employment action.  *See Monroe v. Xerox Corp.*, 664 F.

Supp. 2d 235, 240 (W.D.N.Y. 2009) (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d

Cir. 2000)).  Although a plaintiff does not need to demonstrate that the conduct that he opposed

was, in fact, a violation of Title VII, he must establish that he had a good faith, reasonable belief

that his employer's challenged actions violated Title VII.  *See id.* at 241 (quotations and citations

omitted).

Plaintiff argues that there is no question that he engaged in a protected activity when he

exercised his rights under the CBA by grieving the discipline that Defendant OCRRA imposed

on him.  However, there is nothing in the record to support this assertion.  In order to qualify as

"protected activity" for purposes of Title VII, the plaintiff must indicate in some manner that he

complained that the defendant discriminated against him because of his race.  Nowhere in

Plaintiff's grievance, in which he claimed that Defendant OCRRA had subjected him to "overly

harsh discipline," did Plaintiff mention discrimination or that Defendant OCRRA had disciplined

him because of his race.[4]

Furthermore, Plaintiff acknowledges that his first complaint of discrimination did not

occur until June 22, 2007, during the Step Three grievance meeting that Defendant Rhoads

conducted, at which time Plaintiff told Defendant Rhoads that he was trying to "whip him" with a

pen.  *See* Defendants' Statement of Material Facts at ¶ 50 (citing Jones Transcript dated

November 19, 2009, p. 26).  Approximately one month later, on July 25, 2007, again during Step

Three of the grievance process, union counsel mentioned "discrimination" to Defendant Rhoads;

however, Plaintiff was not present for this conversation and did not make the claim.  *See id.* at

¶ 51 (citing Jones Transcript dated November 19, 2009, pp. 20 and 22).  In response to that

statement, Defendant Rhoads suggested that, if Plaintiff believed there was discrimination, he

should file a complaint with Defendant Nosik pursuant to OCRRA's anti-

harassment/discrimination policy.  *See id.* at ¶ 52 (citing Jones Transcript dated November 19,

2009, p. 20).  Plaintiff never did so.  *See id.* at ¶ 53 (citing Jones Transcript dated November 19,

2009, p. 21; Nosik Affidavit ¶ 9).

---

[4] On the grievance form that Plaintiff completed on May 14, 2007, he stated the
following:

> **Nature of Grievance:**          overly harsh Displine [sic]
>
> **Contract Section(s) Grieved:**          Art 19 (19.3).  Grievant
> believes much of this has been taken out of context & feels a
> meeting/job discussion can rectify the situation.
>
> **Remedy and/or Resolution Sought:**          Rescind the
> suspension, at the very least, since Article 19.5 allows for "extra
> time" for management to conduct an investigation, the union asks
> for the same consideration, and requests no discipline until that is
> completed.

Other than these two brief references to discrimination, which occurred **after** Plaintiff had filed his grievance to dispute the discipline he had received, there is nothing in the record to suggest that Plaintiff engaged in any protected activity prior to filing his complaint with the New York State Division of Human Rights.   Therefore, the Court concludes that Plaintiff has failed to establish that he engaged in any protected activity prior to Defendant OCRRA's decision to discipline him and that he thus has failed to establish a *prima facie* case of retaliation. Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's Title VII retaliation claim.  *See Monroe*, 664 F. Supp. 2d at 241-42 (holding that grievances brought pursuant to a collective bargaining agreement "can be used [to] meet plaintiff's *prime [sic] facie* burden of demonstrating that she engaged in a protected activity as a matter of law" only if they mention discrimination based upon a protected category (citation omitted)).

## IV. CONCLUSION

After reviewing the entire record in this matter, the parties' submissions and oral arguments, and the applicable law, and for the above-stated reasons as well as the reasons stated at the close of oral argument, the Court hereby

-21-

ORDERS that Defendants' motion for summary judgment is **GRANTED**; and the Court

further

ORDERS that the Clerk of the Court shall enter judgment in favor of Defendants and

close this case.

**IT IS SO ORDERED.**

Dated: March 31, 2011
        Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge